**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

Nathan L. Norby

Debtor.

Chapter 12
BKY # 26-42825

## NOTICE OF HEARING ON CONFIRMATION OF PLAN

PLEASE TAKE NOTICE THAT pursuant to Bankruptcy Rule 2002(a) (8), the Hearing on Confirmation of plan will be heard on Tuesday, January 5, 2027 at 1:30 p.m., or as soon thereafter as counsel may be heard. The hearing will be conducted telephonically. Please contact Judge Fisher's Courtroom Deputy by email at mnb_fisher_hearings@mnb.uscourts.gov(link sends e-mail) or by telephone at 651-848-1061 to obtain the dial-in information. Dial-in instructions for telephonic hearings will also be displayed the day prior to the hearing on Judge Fisher's public calendar here: https://www.mnb.uscourts.gov/judges-calendars. Any person wanting to appear in person must contact Judge Fisher's Courtroom Deputy at 651-848-1061 at least 48 hours prior to the hearing.

1. The Debtor has filed a Modified Chapter 12 Plan dated November 23, 2026. A copy of the Chapter 12 Plan is enclosed with this Notice. The court may confirm a plan after notice and hearing under 11 U.S.C. §§1224 and 1225. Confirmation of a plan binds the debtor, creditors and other parties in interest under 11 U.S.C. § 1227.

2. An objection to confirmation of the plan shall be made by motion under Local Rule 3015-2(e). Seven days prior to the confirmation hearing is the last day to timely serve and file an objection, which would be Tuesday December 29, 2026. Any objection to confirmation of a chapter 12 or 13 plan need only comply with Local Rules 9006-1(b) and 9013-1(b) and (c).

/ s / Sam Calvert

Sam Calvert, attorney for debtor
1011 2nd ST N STE 107.
St. Cloud MN 56303
320-252-4473
calcloud@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

Nathan LuVerne Norby,

Chapter 12
BKY No. 26-42825-WJF

Debtor.

# CHAPTER 12 PLAN OF REORGANIZATION DATED NOVEMBER 23, 2026

## PART 1: TERM AND EFFECTIVE DATE

This plan shall continue for a period of three years from its effective date. The date of the entry of the order first confirming a plan is the effective date.

## PART 2: LIQUIDATION ANALYSIS

The debtor's net equity in their property liquidation, after deducting the amounts of the secured claims and exemptions, is $0. The priority class (but not including attorney's fees) and non-priority unsecured class of claims described below shall receive, in total, a minimum distribution of $15,000.00 or payment in full of allowed claims, whichever is less. The debtor's liquidation analysis is attached to this plan as Exhibit A.

## PART 3: DISPOSABLE INCOME

For the term of this plan, all of the debtor's disposable income (income not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the debtor and their dependents), regardless of the amount, will be paid to the Trustee. The Trustee shall disburse these funds first to any unpaid priority claims (including administrative expenses and Trustee's fees) and second to non-priority unsecured creditors.

## PART 4: LIVING EXPENSES

The debtor's projection of living expenses are $3,000.00 per month paid from the debtor's continuing operations. The debtor's Railroad Retirement income is in addition to this amount, as that income is not devoted to the plan. The debtor shall limit his annual withdrawals from his business(es) for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

## PART 5: COSTS OF ADMINISTRATION AND PROFESSIONAL FEES

Claims for compensation and expenses of professionals and Court costs shall be paid upon approval by the Court and as directed by the Court or the terms of this plan.

**Class 1: Trustee's Fees.** The Chapter 12 Trustee shall make application to the Court for approval of trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties under the Bankruptcy Code in administering this case. The

debtor shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtor, unless otherwise ordered by the Court. **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein. Creditors shall only accept direct payments from the debtor if specified in the Plan.**

**Class 2: Debtor's Attorney's Fees.** The Debtor's attorney will apply to the Court for compensation in this case for attorney's fees, administrative work and reimbursement of costs and expenses incurred during the representation of the debtor pre- and post-petition. Upon approval of such compensation by the Court, the debtor shall make an annual payment for the remaining fees owed (after application of the debtor's pre-retention retainer of $5,000.00) to the Chapter 12 Trustee on or before January 31, 2027. Additional approved debtor's attorney's fees shall be paid to the Trustee on or before January 31 of the year following the year in which they are approved. The debtor shall provide the additional funds as is necessary to provide for the Trustee's 5% fee when making these payments.

## PART 6: SECURED CLAIMS AND RETENTION OF LIENS

The term “secured claim” as used in this Plan shall mean an allowed claim in an amount equal to the value of a creditor's interest in real or personal property, as set forth in this Part or order of the Court. The balance of the total allowed claim held by a given creditor shall be deemed to be an unsecured claim. However, nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of the unsecured portion of the claim. All creditors whose claims are treated as secured in this plan shall retain their liens on the collateral securing their respective claims as specified in the plan and until such claims are paid in full in the amount allowed as secured. A creditor shall release its lien(s) upon payment in full of the secured claim, as set forth in this Plan or order of the Court. Except as modified by the terms of this Plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference.

If the value of creditor's interest in real or personal property is such that the creditor does not have a secured claim as defined and set forth in this Part, said creditor shall release its lien upon the entry of an order of discharge by the Court. The balance of the total allowed claim held by the creditor shall be deemed to be a non-priority unsecured claim. However, nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of the unsecured portions of the claim.

**Class 1: Glenwood State Bank (Claim 16)**

First, the debtor will sell his westernmost real estate parcel consisting of about 155 acres, with a property tax id number of 18-0087-000. Reference is made to the attached diagram in which this parcel is labeled as Tract 1. The debtor understands that the state court receiver in court file 76-FA-23-206 has a bid of $1,240,000.00 and it will be sold at that price, or more if an upset bid is received. The sale will be pursuant to a court order approving the sale. The expenses of sale, as allowed by the Court, will be deducted from the sales proceeds and the net proceeds will be paid directly to Glenwood State Bank. Glenwood State Bank filed Claim 16 in the amount of $1,909,149.71. The debtor expects that this sale will reduce the claim of Glenwood State Bank to

approximately $809,149.71. At the closing of the sale Nicole Norby must release this parcel of land from the judgment in Swift County District Court in case 76-FA-23-206 entitled In re the Marriage of Nicole Terese Norby and Nathan LuVerne Norby, since there is no equity to which the lien can attach.

Second, the debtor has harvested his 2026 soybean crop of approximately 19,300 bushels, with a gross value of approximately $230,340.00. Of that crop, 6,300 bushels have been sold at an average price of $11.80 per bushel, for $74,340.00, and the remaining 13,000 bushels, estimated at $12.00 per bushel, or $156,000.00, will be sold as local conditions permit. The net sales proceeds, after the payment of amounts paid under the November 2, 2026 cash-collateral stipulation, will be paid directly to Glenwood State Bank as they are received.

Third, the debtor has approximately $600,000.00 of farming equipment and vehicles. The debtor will sell a substantial portion of the farming equipment and vehicles, and the net proceeds of sale will be paid by the debtor directly to Glenwood State Bank as the proceeds are received. The net proceeds paid to Glenwood State Bank from the equipment sales shall total not less than $400,000.00, as a down payment on its claim, and the sales shall be completed by April 15, 2027, by private sale or public auction, with Court approval under 11 U.S.C. § 363 where required. "Net proceeds" in this context means that the actual costs of sale, such as auctioneer and clerk fees and advertising costs, will be deducted from the sales proceeds. The proceeds of any unit subject to a lien senior to Glenwood State Bank's lien shall first be paid to the holder of that lien. The units to be sold are listed on Exhibit C, Schedule 2. Any shortfall below $400,000.00 by the deadline shall be added to the remaining balance below.

After the real estate sale and the equipment down payment, the remaining balance of Glenwood State Bank's claim is estimated at $249,149.71, before interest and any amounts allowed under 11 U.S.C. § 506(b). The remaining allowed secured balance shall be paid as shown on the following table. The secured balance bears interest at the rate of 7% per annum. The debtor may pre-pay in whole or in part without penalty. If the remaining balance turns out to be more or less than $249,149.71, the annual payments shall be adjusted to amortize the balance over seven years.

| Payment Due Date | Payment Amount | Trustee's Fees (5%) | Total Payment | Paid by: |
|---|---:|---:|---:|---|
| January 31, 2028 | $51,027.14 | $2,551.36 | $53,578.50 | Trustee |
| January 31, 2029 | $51,027.14 | $2,551.36 | $53,578.50 | Trustee |
| January 31, 2030 | $51,027.14 | $2,551.36 | $53,578.50 | Trustee |
| January 31, 2031 | $51,027.14 | | $51,027.14 | Debtor |
| January 31, 2032 | $51,027.14 | | $51,027.14 | Debtor |
| January 31, 2033 | $51,027.14 | | $51,027.14 | Debtor |
| January 31, 2034 | $51,027.14 | | $51,027.14 | Debtor |
| **Total** | **$357,189.98** | **$7,654.08** | **$364,844.06** | |

If the Court approves the sale to the prospective purchaser under Part 13(d), which includes Parcel 18-0087-000, that sale replaces the sale of that parcel described above, and Glenwood State Bank shall be paid its allowed secured claim in full from that sale at closing, as shown on Exhibit C, Schedule 1.

Until Glenwood State Bank is paid in full, it will retain its mortgage lien on the real property described in its mortgage (obviously excluding the 155 acre tract sold outright).

**Class 2: Nicole Norby (Claim 15)**

Reference is made to the attached diagram. The debtor will sell the parcels described as Tracts 3, 4, and that part of 7 being westerly of the thread of the river on contracts for deed to Joshua Norby. The prices per Tract are:

| Tract | Approximate acres | Price | Annual installment (7% interest) | Balance due |
|---|---|---|---|---|
| Tract 3 | 68 | $489,600.00 | $39,374.52 | January 1, 2034 |
| Tract 4 | 107.47 | $730,660.00 | $58,876.43 | January 1, 2034 |
| Tract 7 west of the river | 61 | $482,611.00 | $38,891.88 | January 1, 2034 |
| **Total** | | **$1,702,871.00** | **$137,142.83** | |

Upon the effective date the debtor will deed those parcels to Nicole Norby and for clarity will also assign the vendor's interest to Nicole Norby. If the debtor's objection to claim noted below is upheld by the Court, the deeding of those Tracts and assignment of the vendor's interests will satisfy the secured claim of Nicole Norby. Provided, however, that until the entire claim of Glenwood State Bank has been paid Nicole Norby's marital lien will persist in the other real property owned by Nathan Norby which is subject to that lien and will continue to secure an amount equal to the unpaid portion of the Glenwood State Bank claim until the claim of Glenwood State Bank is paid in full. When the Glenwood State Bank claim is paid in full Nicole Norby shall satisfy her marital lien.

Nicole Norby filed Claim 15 in the amount of $2,047,595.56, asserted as secured and priority. The debtor has objected to the claim (Doc. No. 42) and contends that the secured portion of the claim must be reduced by the $415,995.64 paid toward the marital lien from the cabin sale at the May 20, 2024 closing, leaving not more than $1,631,599.92, and further reduced by certain payments which should have credited toward her claim under the Decree in the amount of approximately $100,000.00. If the Court allows Claim 15 in an amount greater than $1,702,871.00, the excess shall be amortized by the Debtor in quarterly installments over five years, bearing interest at 4% per annum, which is the judgment rate under Minn. Stat. 549.09. That excess shall be secured by Nicole Norby's marital lien which will persist in the other real property owned by Nathan Norby. Pending allowance, the Trustee shall reserve payment of any amount attributable to the disputed portion of the claim. Presumably Nicole Norby will amend her claim to claim an unsecured claim of $415,995.64 due to her having paid that amount to Glenwood State Bank and that amount will be paid as shown in part 9.

**Class 3: USDA Farm Service Agency**

This claim, in the filed amount of $331,331.57 is secured by corn grown by the debtor in prior years which is stored in bins, and by a junior security interest in some farm machinery. There are about 40,000 bushels of corn (bin counts: Bins 1 and 2, about 13,000 and 15,000 bushels; Bin 3, about 12,000 bushels), estimated at $3.75 per bushel, or $150,000.00 gross. The corn will be sold on or before February 1, 2027. The net proceeds of the sale of the corn will be paid directly to the creditor. The debtor will charge 20 cents per bushel to remove the corn from the bins and take it to a nearby elevator where it will be sold upon delivery. If instead of having the debtor haul the corn FSA wishes to have its own contractor pick up the corn at its expense it may do so. The claim is additionally secured by a 2010 Harley Davidson motorcycle, a 2003 Hurricane boat,

and a 2003 Tenn trailer. The debtor will sell these last three items by April 25 2027; the net proceeds will be turned over to the creditor as the items are sold. If the items are not sold by April 15 2027 FSA shall have relief from the stay as to those items in order to repossess them and dispose of them.

**Class 5: CNH Industrial Capital America LLC (Claims).** Claim 2 was filed as secured in the amount of $66,070.77. The claim is secured by a purchase money security interest in a 9230 Case IH combine, valued at $76,000.00. The debtor will sell this combine (estimated value $115,000.00) in the same fashion as stated above in class 1 (Glenwood State Bank) and will pay off the CNH claim and pay the surplus, if any, to Glenwood State Bank. These payments will be direct by the debtor.

**Class 6: Swift County Real Estate Taxes.** Scheduled in the amount of $18,436.00. Taxes on parcels sold shall be paid at closing; the remaining taxes shall be paid in full with statutory interest within 36 months after the effective date.

## PART 7: EXECUTORY CONTRACTS AND LEASES

This Part consists of executory contracts and leases existing as of the date of filing. All such executory contracts and leases are rejected unless specifically assumed in this Part. The debtor assumes the following executory contracts or unexpired leases. Cure provisions, if any, are set forth below.

| Contract or lease | Assumed or rejected | Cure provisions |
|---|---|---|
| Farm Credit Leasing Services Corporation (Claim 5, $76,053.00) | assumed | Arrears of $18,500.00 shall be cured; the lease (Case IH 350 tractor, which the debtor keeps) is assumed and regular lease payments continue to be paid directly by the debtor. The $18,500.00 is cured in 12 equal monthly payments of $1,541.67 beginning the first month after the effective date of the plan, as required by 11 U.S.C. § 365(b)(1)(A). |

## PART 8: PRIORITY AND OTHER ADMINISTRATIVE EXPENSE CLAIMS

This class consists of filed and allowed priority and allowed administrative expense claims (other than those separately addressed under Part 5 and Part 10). Only creditors for which proofs of claim have been filed and allowed will be paid under this Part. The amounts listed below are estimates. The Trustee will pay the allowed portion of the priority amount listed in the proof of claim for the creditors listed below. Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance or classification of the claim. The debtor will submit all disposable income to the Trustee for payment of priority and non-priority unsecured claims. Notwithstanding, the debtor shall make minimum payments to this class on the schedules set forth below.

**Class 1: Internal Revenue Service.** This creditor has filed a priority claim (Claim 9) in the amount of $129,882.94. The debtor will pay the claim pursuant to the following schedule:

| Payment Due Date | Payment Amount | Trustee's Fees (5%) | Total Payment | Paid by: |
|---|---|---|---|---|
| January 31, 2028 | $25,976.59 | $1,298.83 | $27,275.42 | Trustee |
| January 31, 2029 | $25,976.59 | $1,298.83 | $27,275.42 | Trustee |
| January 31, 2030 | $25,976.59 | $1,298.83 | $27,275.42 | Trustee |
| January 31, 2031 | $25,976.59 | | $25,976.59 | Debtor |
| January 31, 2032 | $25,976.58 | | $25,976.58 | Debtor |
| **Total** | **$129,882.94** | **$3,896.49** | **$133,779.43** | |

**Class 2: Minnesota Department of Revenue.** This creditor has filed priority claims (Claims 7 and 8) in the total priority amount of $3,950.66. The debtor will pay the priority portions pursuant to the following schedule:

| Payment Due Date | Payment Amount | Trustee's Fees (5%) | Total Payment | Paid by: |
|---|---|---|---|---|
| January 31, 2028 | $790.13 | $39.51 | $829.64 | Trustee |
| January 31, 2029 | $790.13 | $39.51 | $829.64 | Trustee |
| January 31, 2030 | $790.13 | $39.51 | $829.64 | Trustee |
| January 31, 2031 | $790.13 | | $790.13 | Debtor |
| January 31, 2032 | $790.14 | | $790.13 | Debtor |
| **Total** | **$3,950.66** | **$118.53** | **$4,069.19** | |

## PART 9: NON-PRIORITY UNSECURED CLAIMS

This class consists of filed and allowed non-priority unsecured claims, including, but not limited to, allowed non-priority unsecured claims of creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, allowed non-priority unsecured claims resulting from the value of a secured claim being of a value less than the creditor's collateral, allowed non-priority claims of those secured creditors whose claims are determined to be unsecured, allowed non-priority unsecured claims arising from a liquidation and subsequent deficiency, allowed non-priority governmental claims arising under 11 U.S.C. § 1232, and allowed non-priority unsecured claims for taxes and penalties which are not included in any other Class. Payments made to this Class shall be disbursed by the Trustee pro-rata based on the amount of filed and allowed claims existing on the date of disbursement. Only creditors for which proofs of claim have been filed and allowed will be paid under this Part. Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim. As of the date of the filing of the plan, filed non-priority unsecured claims total approximately $223,139.79, plus any deficiency claims. The debtor will submit all disposable income to the Trustee for payment of filed and allowed priority and non-priority unsecured claims. Notwithstanding, the debtor shall make minimum payments to this class on the following schedule. The liquidation analysis shows that the debtor has non-exempt equity of $0. The debtor will pay the lesser of $15,000.00 or all allowed unsecured claims during the course of the plan. Pursuant to Bankruptcy Rule 3021, the Trustee shall not make any distributions to non-priority unsecured claims until the final month of the last confirmed plan. Any non-governmental, unsecured claims associated with claims filed after the non-governmental claim filing deadline are disallowed as these creditors did not timely file claims. These claims will not be included in the pro rata distribution under Part 9 and will be discharged upon the debtor receiving a discharge in this case.

| Creditor | Claim no | Amount |
|---|---|---|
| Agassiz Seeds, Inc. | 1 | $17,439.59 |
| CNH Industrial Capital America LLC | 3 | $16,622.44 |
| John Deere Financial | 4 | $198,615.82 |
| Jefferson Capital Systems LLC | 6 | $1,103.92 |
| Minn. Dept. Revenue | 7 | $1,188.80 |
| Minn. Dept. Revenue | 8 | $268.24 |
| Bayer Crop Science | 10 | $188,650.61 |
| Nutrien Crop Solutions | 11 | $7,041.88 |
| Ziegler, Inc. | 12 | $24,886.34 |
| Retro Advance | 13 | $182,401.35 |
| USDA Farm Service Agency | 14 | (estimate) $160,231.57 |
| Nicole Norby (amount she paid Glenwood State Bank) | 15 | $415,995.64 |
| **Total** | | **$1,001,446.20** |

| Payment Due Date | Payment Amount | Trustee's Fees (5%) | Total Payment | Paid by: |
|---|---|---|---|---|
| January 31, 2028 | $5,000.00 | $250.00 | $5,250.00 | Trustee |
| January 31, 2029 | $5,000.00 | $250.00 | $5,250.00 | Trustee |
| January 31, 2030 | $5,000.00 | $250.00 | $5,250.00 | Trustee |
| **Total** | **$15,000.00** | **$750.00** | **$15,750.00** | |

## PART 10: 11 U.S.C. § 1232 GOVERNMENTAL CLAIMS

Governmental claims arising under 11 U.S.C. § 1232 (1) shall be treated as non-priority unsecured claims arising before the date on which the petition is filed; (2) shall be treated under Part 9 of the plan (Non-Priority Unsecured Claims), provided that the claim is not otherwise disallowed; (3) shall not be entitled to priority treatment under 11 U.S.C. § 507; and (4) shall be discharged in accordance with 11 U.S.C. §§ 1228 & 1232. If the debtor files a tax return after the filing of the petition for a period in which a claim under 11 U.S.C. § 1232(a) arises, and the claim relates to the tax return, the debtor shall serve notice of the claim pursuant to 11 U.S.C. § 1232(d)(2). Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim.

## PART 11: EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtor proposes to continue their farming operations and make the plan payments out of farm or other income. The debtor's projections of income, operating expenses, and plan payments are attached as Exhibit B. The sources and uses of the sales under this plan are attached as Exhibit C.

## PART 12: GENERAL PROVISIONS

1. The Court shall retain jurisdiction over the debtor and their property for the term of the plan. Property of the estate vests in the debtor upon completion of plan payments due during the term of the plan.
2. As part of the continuing operation, the debtor shall submit operating reports and bank statements to the Chapter 12 Trustee at the frequency the trustee requests (e.g., monthly, quarterly, etc.). The debtor shall provide the Chapter 12 Trustee copies of tax returns annually once filed.
3. For the duration of the Chapter 12 plan, the debtor shall seek Court approval to obtain credit or incur debt outside the ordinary course of business.
4. For the duration of the Chapter 12 plan, the debtor shall seek Court approval to use, sell, or lease property outside the ordinary course of business.
5. Either the debtor or any creditor may record this plan and the Order confirming this plan with the Office of the County Recorder of each county in which the debtor have an interest in real estate without violation of the automatic stay.
6. The debtor shall keep the real estate, buildings, equipment and growing crops insured and provide proof of insurance to the Trustee and lienholders on request.

## PART 13: SALES AND PLAN IMPLEMENTATION

**(a) Contracts for deed to Joshua Norby.** The sales in Part 6, Class 2 shall be made under Real Estate Purchase Agreements and Financing Addenda describing the land by the survey prepared by O'Malley and Kron, subject to County approval of the subdivision. Each contract provides for annual installments including interest at 7% simple interest, with the balance due January 1, 2034. Closing occurs 15 days after the order confirming the plan becomes final.

**(b) Equipment.** As provided in Part 6, Class 1, the debtor shall sell equipment netting approximately $400,000.00 to Glenwood State Bank. The units to be sold are listed on Exhibit C, Schedule 2.

**(c) 2026 crop and stored corn.** The 2026 crop and the stored corn shall be sold on or before February 1, 2027, and the proceeds handled as provided in Part 6.

**(d) Prospective purchaser of remaining tracts.** On November 19, 2026, a prospective purchaser gave a soft, non-binding indication of a purchase price of approximately $10,000.00 per acre for the land it ends up purchasing. If a solid purchase offer is received, Joshua Norby will purchase Tracts 3, 4 and 7 as shown in Part 6, Class 2, and the prospective purchaser may buy the remaining parcels listed below. The debtor's homestead parcel (18-0053-000) and Parcel 18-0080-200 are not included. The indication is not an offer capable of acceptance; any sale is subject to the purchaser's internal approval and site due diligence, a survey, a definitive written purchase agreement, and Court approval on motion. Net sale proceeds shall be paid at closing to the lienholders on each parcel in order of priority: first to Glenwood State Bank, until its allowed secured claim is paid in full; any surplus will be paid to the Trustee for application on the payments due under Sam: Part 8, then under Part 9. If the Court approves this sale, it replaces the sale of Parcel 18-0087-000 described in Part 6, Class 1. Parcels and price:

| Parcel (PID), Swenoda Township, Swift County | Description | Acres | At $10,000.00 per acre |
|---|---|---|---|
| 18-0087-000 | E½ NW¼ and E½ SW¼ (exc.), Sec. 16 (the 155-acre parcel) | 155.00 | $1,550,000.00 |
| 18-0079-000 (part) | N½ NW¼, Sec. 15, except Tract 7 (80.00 ac less 61 ac; subject to survey) | 19.00 | $190,000.00 |
| 18-0054-000 | Part SE¼ Sec. 10 and part NE¼ Sec. 15 | 10.55 | $105,500.00 |
| **Total** | | **184.55** | **$1,845,500.00** |

| Term | Indication |
|---|---|
| Prospective purchaser | A prospective purchaser (soft, non-binding indication dated November 19, 2026) |
| Sale or lease | Sale |
| Parcels covered | 18-0087-000; the part of 18-0079-000 outside Tract 7; 18-0054-000. Excluded: 18-0053-000 (homestead), 18-0080-200, and Tracts 3, 4 and 7 |
| Acres | 184.55 acres per county tax records and the contract acreage of Tract 7, subject to survey and to the acres actually purchased |
| Price per acre | Approximately $10,000.00 per acre |
| **Total price** | **Approximately $1,845,500.00** |
| Deposit / earnest money | tbd |
| Contingencies and due-diligence period | Purchaser's internal approval, site due diligence and studies, survey, a definitive purchase agreement and Court approval; due-diligence period: tbd |
| Expected closing date | tbd |
| Use of proceeds | At closing as stated above and on Exhibit C, Schedule 1 |

If the prospective purchaser instead buys all of the parcels it was offered, including the land in Tracts 3, 4 and 7, the result is shown on Exhibit C, Schedule 5, and that sale would replace the contracts in Part 6, Class 2 as to the land sold.

**(e) Retained real estate.** The debtor retains the home place and buildings (the part of Parcel 18-0053-000 outside Tracts 3 and 4), Parcel 18-0080-200 and all other real estate not sold under Part 6 or Part 13(d).

**(f) Buyer of Tracts 3, 4 and 7.** Joshua Norby is the buyer of Tracts 3, 4 and 7 on the prices and terms stated in Part 6, Class 2 and Part 13(a), and the vendor's interest is assigned to Nicole Norby under Part 6, Class 2.

## PART 14: CONTINUED OPERATIONS

**(a) Continued operation.** The debtor will continue to operate his farming business throughout the term of this plan, farming about 400 rented acres of corn as shown in Table 1 and doing custom work for others. The plan is feasible under 11 U.S.C. § 1225(a)(6) because the plan payments are funded from the debtor's farm income, custom-work income and other income shown in Table 2 and Exhibit B, and from the sales in Part 6 and Part 13. Joshua Norby's contract-for-deed payments for Tracts 3, 4 and 7 are paid directly to Nicole Norby under Part 6, Class 2 and reduce her claim; they are not income of the debtor, do not pass through the debtor's hands, and do not fund the debtor's operations or plan payments.

**(b) Property retained for the operation.** The debtor retains: the farmstead and home site (the part of Parcel 18-0053-000 outside Tracts 3 and 4); the grain bins and grain-handling facility; Parcel 18-0080-200; and the equipment not sold under Part 6, Class 1 and Part 13(b), listed as

follows: 2012 Case IH 2612 12-row corn head; Demco 1050 grain cart; Case IH 1250 24-row planter; Wil-Rich Quad X-2 45-foot field cultivator; Case IH 870 Ecolo-Tiger ripper; Case IH SPX4260 sprayer; 1994 Fontaine chemical trailer; 1990 Peterbilt 378 and 1990 Peterbilt 375 truck tractors; two 2011 Timpte hopper trailers; and 2002 Chevrolet 1500 pickup; fuel tanks, shop tools and small equipment; and the leased Case IH 350 tractor (Part 7). If the grain bins lie within land sold under Part 13(d), that sale shall either exclude the bin site or provide for the debtor's continued use of it.

**(c) Operating land.** The debtor will farm about 400 acres of corn, all rented, on the land listed in Table 1: Tracts 3, 4 and 7, rented from Joshua Norby, and Parcel 18-0087-000 and the 19 acres of Parcel 18-0079-000, rented back from the purchaser under Part 6, Class 1 or Part 13(d). Farming this land depends on written leases for it. Leases pending; the rent of $240.00 per acre in Tables 1 and 2 is an estimate. The retained home site is not cropped.

**(d) Lease terms and approval.** Leases with family members shall be in writing, on arm's-length terms at no less than market rent, and disclosed to the Trustee. Any lease of property of the estate, and any lease outside the ordinary course of business, is subject to Court approval under 11 U.S.C. § 363. The debtor shall provide copies of all leases and an annual report of acres farmed, yields, sales and rent paid to the Trustee.

**(e) Income and plan payments.** The gross income in Table 2, less the operating expenses, rent and living expenses, is the debtor's disposable income under Part 3. It is carried to Exhibit B and funds the Part 6, Class 1 payments to Glenwood State Bank, any payments to the USDA Farm Service Agency under Part 6, Class 3, the Part 8 payments to the Internal Revenue Service and the Minnesota Department of Revenue, the Part 9 payments to non-priority unsecured creditors, and the Trustee's fee. On these figures, with Railroad Retirement covering the living expenses, the debtor projects net cash after plan payments of about -9,753.06 for the first plan year and about $10,346.94 in the second. The contract-for-deed payments in Part 6, Class 2 are not part of these figures.

**Table 1 – Land to be farmed**

| # | Landlord | Tract / parcels | Deeded acres | Tillable acres farmed | Cash rent per acre or crop share | Term |
|---|---|---|---|---|---|---|
| 1 | Joshua Norby | Tract 3: 18-0049-000, 18-0050-000, part 18-0053-000 | 68.00 | 66 | $240 [est.] | 2027 [lease pending] |
| 2 | Joshua Norby | Tract 4: part 18-0053-000 | 107.47 | 105 | $240 [est.] | 2027 [lease pending] |
| 3 | Joshua Norby | Tract 7: part 18-0079-000 | 61.00 | 59 | $240 [est.] | 2027 [lease pending] |
| 4 | Purchaser under Part 6, Class 1 or Part 13(d) (leaseback) | 18-0087-000 | 155.00 | 151 | $240 [est.] | 2027 [lease pending] |
| 5 | Purchaser under Part 13(d) (leaseback) | 18-0079-000 (part outside Tract 7) | 19.00 | 19 | $240 [est.] | 2027 [lease pending] |
| 6 | Purchaser under Part 6, Class 1 or Part 13(d) (leaseback) | 18-0054-000 | 10.55 | 0 | None | - |
| 7 | Debtor (retained home site) | Farmstead, part 18-0053-000 | 4.53 [est.] | 0 | None (owned) | Owned |
| 8 | Debtor (retained) | 18-0080-200 | 22.35 | 0 | None (owned) | Owned |

| # | Landlord | Tract / parcels | Deeded acres | Tillable acres farmed | Cash rent per acre or crop share | Term |
|---|---|---|---|---|---|---|
| 8 | Debtor (retained) | 18-0080-200 | 22.35 | 0 | None (owned) | Owned |
| | **Total** | | 447.90 | 400 [est.] | | |

**Table 2 – Crop plan and gross income, first plan year (rows match Table 1)**

| # | Crop | Acres | Expected yield (bu/acre) | Price ($/bu) | Gross income | Rent or landlord share |
|---|---|---|---|---|---|---|
| 1 | Corn | 66 | 200 | $4.50 | $59,400.00 | $15,840.00 |
| 2 | Corn | 105 | 200 | $4.50 | $94,500.00 | $25,200.00 |
| 3 | Corn | 59 | 200 | $4.50 | $53,100.00 | $14,160.00 |
| 4 | Corn | 151 | 200 | $4.50 | $135,900.00 | $36,240.00 |
| 5 | Corn | 19 | 200 | $4.50 | $17,100.00 | $4,560.00 |
| 6 | None (not cropped) | ________ | ________ | ________ | ________ | ________ |
| 7 | None (not cropped) | ________ | ________ | ________ | ________ | ________ |
| 8 | None (not cropped) | ________ | ________ | ________ | ________ | ________ |
| 9 | Custom work | | | | $100,000.00 | |
| 10 | RR Retirement | | | | $46,000.00 | |
| 11 | USDA hauling [pending] | | | | $8,400.00 | |
| 12 | Lot lease [pending] | | | | $6,795.00 | |
| | **Total** | 400 | | | $521,195.00 | $96,000.00 [est.] |

## PART 15: DEFAULT

If the sale of the 155-acre parcel in Part 6, Class 1 has not closed by March 15, 2027 (as extended by agreement or Court order), the debtor shall within 15 days move to sell that parcel at public auction by a Court-approved licensed auctioneer.

Dated: November 23, 2026

/e/ Sam Calvert
Sam Calvert, MN ID #1431X
Attorney for the Debtor
1011 2nd St N, Ste 107
St. Cloud, MN 56303
320-252-4473
calcloud@gmail.com

Signed: Nathan LuVerne Norby
Nathan LuVerne Norby, Debtor

# Exhibit A

Nathan Norby Liquidation Analysis

| Line | Claim 15 as filed | secured claim | Exemption | net equity |
|---|---|---|---|---|
| Real estate Tract 1 | $1,240,000.00 | | | |
| Real estate tracts 3, 4, 7 | $1,702,871.00 | | | |
| Real estate "new tract" | $138,100.00 | | | |
| Real estate 18-00540000 | $53,400.00 | | | |
| Real estate 18-0053-000 bldg | $141,700.00 | | | |
| Real estate total | $3,276,071.00 | $1,238,375.71 (GSB) | | |
| estimated sales expense | $140,000.00 | $1631599.92 (NN) | $266,095.37 | $0.00 |
| pickup | $10,000.00 | | $10,000.00 | $0.00 |
| vehicles | $164,150.00 | $164,150 (GSB) | | $0.00 |
| boat and motorcyle | $29,500.00 | $29,500.00 (FSA) | | $0.00 |
| Household goods | $5,000.00 | | $5,000.00 | $0.00 |
| electronics | $3,000.00 | | $3,000.00 | $0.00 |
| musical equip | $30,100.00 | | $2,200.00 | $27,900.00 |
| clothing | $1,000.00 | | $1,000.00 | $0.00 |
| dog | $1.00 | | $1.00 | $0.00 |
| cash | $100.00 | | | $100.00 |
| checking | $5,000.00 | | $4,291.78 | $708.22 |
| RR retirement | $4,291.78 | | $4,291.78 | $0.00 |
| patronage refunds | $34,059.97 | | | $34,059.97 |
| life insurance cash value | $2,000.00 | | $2,000.00 | $0.00 |
| class action | $1.00 | | $1.00 | $0.00 |
| 2026 crop (est) | $160,000.00 | $160,000.00 (GSB) | | $0.00 |
| stored corn (est.) | $150,0000- $8,400 haulin | $141,600.00 (FSA) | | $0.00 |
| farm equipment | $595,625.00 | $506,624 (GSB) $66,067.00 (CNH) | 13000 | 0 |
| Non-exempt | | | | $62,768.19 |
| Less: Chapter 7 trustee commission (§ 326(a) maximum) | | | -$6,388.41 | |
| Less: priority claims (IRS, MN Revenue) | | | -$133,833.60 | |
| **Available for non-priority unsecured claims (stated lines)** | | | | **$0.00** |
| Non-priority unsecured claims filed | | | $1,054,214.63 | |

Legend:

GSB – Glenwood State Bank; NN-- Nicole Norby; FSA – Farm Service Agy; CNH – CNH Industrial

# Exhibit B

| Line | 2027 | 2028 | 2029 | Basis / source |
|---|---|---|---|---|
| **INFLOWS** | | | | |
| Crop sales, all operating land | $360,000 | $360,000 | $360,000 | 400 ac × 200 bu × $4.50 (Table 2) |
| Gov. payments (USDA hauling, pending) | $8,400 | $0 | $0 | First year only; pending USDA approval |
| Contract-for-deed installments | n/a | n/a | n/a | Paid by Joshua directly to Nicole; not debtor income |
| Off-farm / other income (custom work) | $100,000 | $100,000 | $100,000 | Nathan 11/23; FINPACK 2025/2026 plans $100,000 |
| **Total inflows** | **$468,400** | **$460,000** | **$460,000** | |
| **OUTFLOWS** | | | | |
| Seed, fertilizer, chemicals | $74,739 | $74,739 | $74,739 | FINPACK 2026: seed $69.47 + fert $99.15 + chem $18.23 = $186.85/ac × 400 |
| Fuel, repairs, labor, utilities | $76,509 | $76,509 | $76,509 | FINPACK 2026: fuel $68.38 + repairs $68.38 + labor $25.64 + utilities $17.09 + drying, dues, misc. $11.78 = $191.27/ac × 400 |
| Rent to Joshua Norby, Tracts 3, 4 and 7 | $55,200 | $55,200 | $55,200 | 230 ac × $240 (Table 1; written lease pending) |
| Leaseback rent | $40,800 | $40,800 | $40,800 | 170 ac × $240 (Table 1; lease pending) |
| Other rent / custom hire / equipment rental | $48,600 | $48,600 | $48,600 | Custom/rented planting $25/ac + harvest $50/ac × 400 = $30,000; plus Farm Credit Leasing regular payments $18,600/yr |
| Insurance (crop, farm, buildings, equipment) | $71,326 | $71,326 | $71,326 | Crop ins. FINPACK $29.80/ac × 400 = $11,919; farm policy $59,407/yr (current policy to 12/15/2026; should fall once equipment is sold) |
| Real estate taxes | $13,124 | $13,124 | $13,124 | Proposed tax notice |
| Living expenses (Part 4) | $36,000 | $36,000 | $36,000 | $3,000/month (Nathan) |
| **Total operating and living** | **$416,298** | **$416,298** | **$416,298** | |
| **Disposable income available for plan payments** | **$52,102** | **$43,702** | **$43,702** | Total inflows less total operating and living |

| Plan payments and net cash | 2027 | 2028 | 2029 | Basis / source |
|---|---|---|---|---|
| Class 1 Glenwood – equipment and Part 13(d) closing | sale proceeds | – | – | $400,000 and $1,509,149.71 are paid from sale proceeds, not operating cash; excluded from totals |
| Priority – IRS (Claim 9), incl. 5% Trustee fee | $27,275.42 | $27,275.42 | $27,275.42 | Part 8 schedule; first payment due Jan 31, 2028 |
| Priority – MN Revenue (Claims 7, 8), incl. fee | $829.64 | $829.64 | $829.64 | Part 8 schedule |
| Farm Credit Leasing – Part 7 cure | $18,500 | $0 | $0 | One-time cure (12 monthly payments); regular lease payments are in operating outflows above |
| Non-priority unsecured (Part 9), incl. fee | $5,250 | $5,250 | $5,250 | Part 9 schedule, $5,000 + $250 |
| Attorney fees (Part 5) | $10,000 | $0 | $0 | Sam |
| **Total plan payments (corrected)** | **$61,855.06** | **$33,355.06** | **$33,355.06** | IRS + MN + unsecured each year; cure and attorney fees in 2027 only |
| **Net cash after plan payments (corrected)** | **-$9,753.06** | **$10,346.94** | **$10,346.94** | Disposable income less corrected plan payments |

Debtor may have to defer some family living in order to make 2027 positive.

# EXHIBIT C – SALES: SOURCES AND USES

**Schedule 1 – Sale to the prospective purchaser (Part 13(d)) with Tracts 3, 4 and 7 kept by Joshua Norby**

| Item | Claim 15 less cabin payment |
|---|---|
| Gross price: 184.55 acres × $10,000.00 | $1,845,500.00 |
| Glenwood State Bank – Claim 16 ($1,909,149.71) less the $400,000.00 equipment down payment, paid from 18-0087-000 and 18-0079-000 (part) | ($1,509,149.71) |
| Glenwood § 506(b) interest, fees and costs | $140,000.00 |
| **Glenwood balance after closing** | **0** |

Class 2 balance reduced by the assigned contract-for-deed (Tracts 3, 4 and 7),

| Plan year | Contract payments | Class 2 balance (less cabin payment) |
|---|---|---|
| Year 1 | $137,142.83 | $1,158,106.80 |
| Year 2 | $137,142.83 | $1,020,963.97 |
| Year 3 | $137,142.83 | $883,821.14 |
| Year 4 | $137,142.83 | $746,678.31 |
| Year 5 | $137,142.83 | $609,535.48 |
| Contract principal assigned (total of Tracts 3, 4 and 7) | $1,702,871.00 | Not meaningful |
| | | |

**Schedule 2 – Equipment to be sold (not less than $400,000.00 net to Glenwood State Bank)**

| Unit (item, year/model) | Estimated value | Lienholder(s) | Sale method / date |
|---|---|---|---|
| 2012 Case IH 9230 AFS combine on tracks | $115,000.00 | CNH Industrial Capital America LLC (Claim 2, purchase money), then Glenwood State Bank | By April 15, 2027 |
| Additional equipment to be designated | $351,067.00 | | By April 15, 2027 |
| **Total net proceeds to Glenwood** | **Not less than $400,000.00** | | By April 15, 2027 |

**Schedule 3 – Contract-for-deed tracts (Part 6, Class 2; Part 13(a))**

| Tract | Parcel(s) | Buyers | Price / terms | Vendor's interest |
|---|---|---|---|---|
| Tract 3 (approx. 68 ac) | 18-0049-000, 18-0050-000 and part of 18-0053-000 | Joshua Norby | $489,600.00; $39,374.52/yr at 7%; balance due 1/1/2034 | Assigned to Nicole Norby |
| Tract 4 (approx. 107.47 ac) | Part of 18-0053-000 | Joshua Norby | $730,660.00; $58,876.43/yr at 7%; balance due 1/1/2034 | Assigned to Nicole Norby |
| Tract 7 west of the river (approx. 61 ac) | Part of 18-0079-000 | Joshua Norby | $482,611.00; $38,891.88/yr at 7%; balance due 1/1/2034 | Assigned to Nicole Norby |

### Schedule 4 – USDA: Farm Service Agency (Claim 14)

| Source of payment | Amount | Creditor |
|---|---|---|
| Claim 14, USDA Farm Service Agency (crops, equipment, after-acquired property) | $331,331.57 | FSA |
| stored corn (40,000 bu × $3.75), sold by 2/1/2027 | -$141,600.00 | FSA |
| Harley Davidson and boat (est.) | -$29,500.00 | FSA |
| **FSA balance after the soybean proceeds from the 6,300 bu sold, if all applied to FSA (before the lines above)** | **$160,231.57** | **FSA** |

### Schedule 5 – Alternative: the prospective purchaser buys all of the parcels it was offered (replaces Tracts 3, 4 and 7)

| Item | Claim 15 less cabin payment | Claim 15 as filed |
|---|---|---|
| Gross price: 305.55 acres (18-0049-000, 18-0050-000, 18-0054-000, 18-0079-000, 18-0087-000) × $10,000.00 | $3,055,500.00 | $3,055,500.00 |
| Less: closing costs, commissions and real estate taxes at closing | -50,000.00 | |
| Glenwood State Bank – Claim 16 less the $400,000.00 equipment down payment | ($1,509,149.71) | ($1,509,149.71) |
| Glenwood § 506(b) interest, fees and costs | -$140,000.00 | |
| **Balance after Glenwood is paid in full** | **$1,546,350.29** | **$1,546,350.29** |
| Nicole Norby – Class 2 (allowed amount) | ($1,546,350.29) | ($1,546,350.29) |
| USDA FSA (Claim 14) and CCC from this sale | $0.00 | $0.00 |
| USDA FSA and CCC from other sources | Schedule 4 (crop proceeds released, equipment above $400,000, Class 5 payments) | Same |
| **Surplus to the Trustee for Parts 8 and 9** | **$0.00** | **$0.00** |

### Schedule 6 – If the Part 13(d) sale does not close: Class 1 under Part 6

| Item | Amount |
|---|---|
| Claim 16 as filed (petition date) | $1,909,149.71 |
| Less: Parcel 18-0087-000 at the receiver's $1,240,000.00 bid | ($1,240,000.00) |
| Less: equipment down payment, minimum net | ($400,000.00) |
| **Remaining balance, before sale expenses, crop share and § 506(b) amounts (paid under Part 6, Class 1)** | **$269,149.71** |

**Diagram for reference to parcels to be sold**







| Parcel | Description | Deeded | Tillable | CPI |
|---|---|---|---|---|
| 1 | 155 Acre | 155 | 148.15 | 88.7 |
| 3 | W of River | 68.56 | 45.51 | 86.9 |
| 4 | No of bldg site | 107.47 | 90.87 | 77.7 |
| 7 | S of River | 61.17 | 51.99 | 85.7 |